**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| YVONNE BROWN, et al., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| vs. | § | **Civil Action No. 3:11-CV-3340-N-BH** |
| | § | |
| ATX GROUP, INC, et al., | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order No. 3-251, this case has been referred for pretrial management. Before the Court for recommendation are *Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)*, filed January 30, 2012 (doc. 19); *Plaintiffs' Motion to Strike Exhibits*, filed February 16, 2012 (doc. 24); and *Plaintiffs' Motion for Temporary Intermittent Leave Under FMLA*, filed May 22, 2012 (doc. 36). Based on the relevant filings and applicable law, the motion to dismiss should be **GRANTED**, and the motion for temporary intermittent leave should be **DENIED**. The motions to strike exhibits is **DENIED as moot.**

## I. BACKGROUND[1]

Plaintiffs Yvonne Brown (Mrs. Brown) and Basil Brown (Mr. Brown) (collectively Plaintiffs) have sued ATX Group, Inc., and Cross Country Automotive Services, Inc. (collectively Agero[2]), claiming violations of the Family and Medical Act, 29 U.S.C. § 2601 et seq. (FMLA); violations of the American with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA); violations of

---

[1] The background facts are based on Plaintiffs' allegations in their first amended complaint and are assumed to be true for purposes of the motion to dismiss.

[2] On December 1, 2011, the corporate defendants changed their legal names to Agero Connected Services Inc., and Agero, Inc., and will be referred to collectively as Agero. (*See* doc. 30 at 1 n.1.)

their Fourteenth Amendment rights under 42 U.S.C. § 1983; discrimination in violation of the equal protection clause of the Fourteenth Amendment; retaliation; and loss of spousal consortium. (doc. 17 at 1.) Plaintiffs seek injunctive and declaratory relief, including an order providing them with protective leave under the FMLA, and specific performance. (*Id.* at 18-19.) They also seek damages as well as attorneys fees, expert fees, costs of court, and prejudgment and post-judgment interest. (*Id.* at 17.)

Plaintiffs are the biological and custodial parents of a 15-year-old minor child who has been diagnosed with a serious medical condition that requires daily care for the rest of her life. (*Id.* at 5.) Mrs. Brown is an employee of Agero and was on its permanent "shift window" schedule before December 3, 2010. (*Id.*) Agero's policy allowed the flexible weekly work-schedule to begin between 7:30 a.m. and 9:00 a.m., and to end between 4:00 p.m. and 5:30 p.m. (*Id.* at 5-6.)

On December 3, 2010, Mrs. Brown verbally informed Agero of her child's medical condition and requested a schedule change so that she could care for her and continue to work as close to 40 hours a week as possible. (*Id.*) Agero promptly denied her request. (*Id.*) That same day, Mrs. Brown requested FMLA leave from Agero. (*Id.*) Agero failed to inform Mrs. Brown of her eligibility or her rights and responsibilities under the FMLA, however, and failed to request additional information, such as a medical certification from a doctor substantiating her claims that her daughter had been diagnosed with serious medical condition requiring daily care. (*Id.*) On December 14, 2010, Agero informed Mrs. Brown that she could leave work early each day, as necessary, under the FMLA to care for her child. (*Id.*)

On January 3, 2011, Agero notified Mrs. Brown of a policy change with respect to schedule change requests and verbally informed her that her FMLA request was approved. (*Id.* at 7.) On

January 10, 2011, Mrs. Brown formally requested a schedule change under the new attendance policy to use in conjunction with her recently approved FMLA leave so she could work as close to 40 hours a week as possible.  (*Id.*)  She requested a permanent schedule change beginning at 6:00 a.m. and ending at 2:30 p.m.  (*Id.*)  Agero denied her request the very next day without ever requesting any medical information from her.  (*Id.*)

From January 3, 2011, through April 2, 2011, Mrs. Brown left work from 15 minutes to an hour early on a daily basis to care for her child.  (*Id.*)  On April 8, 2011, Agero informed her that her FMLA request had not been approved, and that she would receive disciplinary attendance points under its attendance policy for each day that she had previously left work early, and each day in the future that she would leave work early to care for her child.  (*Id.*)

On April 15, 2011, Agero gave Mrs. Brown a medical certification form to be completed by her child's doctor, without making a formal request for a medical certification and without telling her when the completed medical certification form was due.  (*Id.*)  On April 22, 2011, the doctor faxed a completed medical certification form dated April 19, 2011, to Agero at a fax number provided by Agero. (*Id.* at 8.)  On April 25, 2011, Agero verbally informed Mrs. Brown that it had not received any completed medical certification from the doctor.  (*Id.*)  That same day, the doctor faxed a completed medical certification form, dated April 19, 2011, to Agero for a second time.  (*Id.*)

On April 26, 2011, Agero gave Mrs. Brown a verbal warning stating that she had violated its attendance policy by leaving work early on a daily basis to care for her daughter.  (*Id.*)  On April 27, 2011, the child's doctor faxed a completed medical certification form dated April 19, 2011, for the third time.  (*Id.*)  On April 28, 2011, Agero acknowledged receipt of the medical certification form faxed on April 22, 25, and 27, but informed Mrs. Brown in writing that it had given her the

wrong medical certification form and that she would have to submit a new form to the child's doctor for completion by May 13, 2011. (*Id.*) Agero also informed her that she would not be subject to disciplinary action under its attendance policy and would not receive points on a temporary basis for leaving work early daily, as needed, to care for her child until a final determination regarding her FMLA request had been made. (*Id.* at 8-9.)

On May 10, 2011, Agero informed Mrs. Brown in writing that she was indeed subject to disciplinary action under the attendance policy, and would receive points for leaving work early on a daily basis to care for her child until it received a new completed medical certification form and approved her for FMLA leave. (*Id.* at 9.) On May 13, 2011, the doctor submitted the second completed medical certification form to Agero. (*Id.*) On May 17, 2011, Mrs. Brown received a written warning stating that she had violated its attendance policy for leaving work early on a daily basis to care for her child. (*Id.*) She also received a letter from Agero denying her FMLA request for not providing a completed medical certification form in a timely manner. (*Id.*)

On May 24, 2011, Mrs. Brown received a final warning stating that she had violated its attendance policy by leaving work early on a daily basis to care for her sick child. (*Id.*) On May 25, 2011, the child's doctor submitted a third completed medical certification form to Agero certifying the need for Mrs. Brown to leave work early on a daily basis, as necessary, to care for her ill child. (*Id.* at 10.) On May 26, 2011, Agero informed Mrs. Brown that it would immediately grant her a schedule change, as opposed to FMLA leave, if it ever received a medical certification authorizing protected FMLA leave. (*Id.*) On May 26, 2011, Agero provided Plaintiffs with an ADA medical questionnaire and informed them that they needed a completed ADA medical questionnaire in order to receive any accommodations to leave work early on a daily basis to care for their ill child.

(*Id.*)

On May 31, 2011, Mrs. Brown filed a formal complaint with the United States Department of Labor (DOL) against Agero alleging repeated violations of her FMLA rights, including denying her the right to leave work early on a daily basis, when necessary, to care for her ill child.  (*Id.*)

On June 17, 2011, Plaintiffs visited the doctor's office to discuss the provision of yet another medical certification to Agero.  (*Id.*)  The doctor's office gave them a note indicating that they were there regarding the ill child.  (*Id.*)  On June 20, 2011, Mrs. Brown gave the note to her immediate supervisor.  (*Id.* at 11.)  That same day, a member of Agero's upper management contacted Mrs. Brown and requested the doctor's note.  (*Id.*)  Mrs. Brown informed the manager that she had provided the note to her immediate supervisor.  (*Id.*)

On June 24, 2011, a DOL investigator handling Mrs. Brown's complaint called and informed her that she had been terminated for violating Agero's attendance policy by failing to provide a doctor's note for her absence from work on June 17, 2011, and that she would be notified by Agero at the end of the workday.  (*Id.*)  The DOL investigator also notified her that her DOL file would be immediately closed upon her termination.  (*Id.*)

Plaintiff left work early that day to care for her ill child.  (*Id.*)  She contacted Agero's upper management and informed them that she had given the doctor's note to her immediate supervisor, and provided upper management with a copy of the note.  (*Id.*)  A member of the upper management then informed her that no decision would be made regarding the doctor's note until Monday, June 27, 2011.  (*Id.*)  On June 27, 2011, Mrs. Brown appeared for work and was not terminated.  (*Id.*)  Instead, Agero permanently changed her work schedule to begin at 6:45 a.m. and end at 3:15 p.m.  (*Id.* at 12.)

On June 28, 2011, Agero informed the DOL that it would not comply with the doctor's most recent certification authorizing protected intermittent leave for Mrs. Brown to leave work early on a daily basis, as necessary, to care for her ill child.  (*Id.*)  On August 2, 2011, Agero agreed before the DOL to remove the three warnings from Mrs. brown's personnel file.  (*Id.*)  On August 2, 2011, Agero indicated to the DOL that it would comply with FMLA intermittent leave authorized by the latest completed medical certification from the child's doctor and allow Mrs. Brown to leave work early on a daily basis, as needed, to care for her ill child.  (*Id.*)

On August 5, 2011, the DOL contacted Mrs. Brown and informed her that her complaint against Agero was substantiated, and that she was indeed legally entitled to leave work early on a daily basis, if necessary, to care for her ill child.  (*Id.*)  On August 5, 2011, Agero gave Mrs. Brown verbal warning number stating that she had violated its attendance policy for leaving work early on a daily basis to care for her ill daughter.  (*Id.* at 12-13.)  Of the 12 dates listed on the warning, 8 were identical to dates listed on two of the warnings that had been rescinded.  (*Id.* at 13.)

On August 26, 2011, the DOL formally informed Mrs. Brown that her complaint against Agero for repeated FMLA violations was substantiated, and that Agero had agreed to remove all FMLA related warnings from her personnel file, comply with the FMLA, and allow her to leave work early on a daily basis, if necessary, to care for her ill daughter.  (*Id.*)  Since approximately June 27, 2011, however, Mrs. Brown has been unable to leave work early on a daily basis, as needed, to care for her ill child.  (*Id.*)  The only leave that she has been able to exercise are full-day leave 1 to 2 times per month at 1 to 2 days per episode.  (*Id.*)  She claims that as a consequence of improper daily care, her child's medical condition has deteriorated over that period of time.  (*Id.*)

On October 28, 2011, Plaintiffs requested a final determination regarding what FMLA rights

were being afforded to Mrs. Brown by Agero.  (*Id.*)  On November 7, 2011, Agero finally provided

Mrs. Brown with her first, final, and only "final determination letter" informing her that she did not

have protected intermitted FMLA leave allowing her to leave work early on a daily basis, when

necessary, to care for her ill daughter, and that she would be subject to disciplinary action under its

attendance policy on any days in which she left work early to care for her ill child.  (*Id.*)

On December 2, 2011, Plaintiffs filed this lawsuit (doc. 2); they filed their first amended

complaint (complaint) on January 17, 2012 (doc. 17).  On January 30, 2012, Agero moved to dismiss

the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  (doc. 19.)  On

February 16, 2012, Plaintiffs moved to strike the exhibits attached to Agero's motion to dismiss

(doc. 24), and on May 22, 2012, they moved for temporary intermittent leave under the FMLA (doc.

36).  All of the motions are now ripe for consideration.

## II.  PLAINTIFFS' MOTION TO STRIKE EXHIBITS

Plaintiffs move to strike the exhibits attached to Agero's motion to dismiss, arguing that a

Rule 12(b)(6) motion to dismiss must be decided based on allegations in the complaint alone, and

that any extrinsic evidence can be considered only upon converting the motion to dismiss into a

motion for summary judgment.  (doc. 24 at 1-2.)

It is well-established that a court cannot look beyond the pleadings in deciding a 12(b)(6)

motion.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Spivey v. Robertson*, 197 F.3d 772, 774

(5th Cir. 1999), cert. denied, 530 U.S. 1229 (2000).  Pleadings in the 12(b)(6) context include more

than allegations in the complaint, however.  Pleadings may include attachments to the complaint.

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley*

*Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Moreover, documents "attache[d] to a motion to

dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins*, 224 F.3d at 499 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir.2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994).

When a party presents "matters outside the pleading" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of the motion to dismiss. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise*, LLC, 255 F. App'x 775, 783 (5th Cir. 2007). "If . . . matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56", and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion", however. Fed. R. Civ. P. 12(d).

Here, Agero has attached to its motion to dismiss a Texas district court opinion finding Plaintiffs to be vexatious litigants, and a Texas appellate court opinion upholding that determination. As the two court opinions are matters of public record, they can be judicially noticed in considering Agero's 12(b)(6) motion without converting it into a motion for summary judgment. The opinions do not effect the outcome of the motion, however, and will not be considered. Plaintiffs' motion to strike is therefore denied as moot.

### III.  AGERO'S MOTION TO DISMISS

Agero moves to dismiss Mrs. Brown's claims under the FMLA, ADA, and § 1983, and her

claims for discrimination and retaliation for failure to state a claim.  (doc. 20 at 6-10.)  It also moves to dismiss the claims against Mr. Brown, arguing that he is not an employee of Agero and his only alleged damages are derivative of the claims made by his spouse.  (*Id.* at 5-6.)

## A.  Rule 12(b)(6) Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981).  However, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  The alleged facts must "raise a right to relief above the speculative level."  *Id.*  In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 129 S. Ct. at 1950-51.

## B. ADA Claim

Agero moves for dismissal of Mrs. Brown's ADA claim, arguing that she has failed to exhaust her administrative remedies. (doc. 20 at 6.)

The ADA prohibits a covered entity from discriminating against a qualified individual with a disability because of that disability. 42 U.S.C. § 12112(a). Before filing suit against an employer for a violation of the ADA, an employee must comply with the ADA's administrative prerequisites. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996). The ADA incorporates by reference the procedures applicable to actions under Title VII. *See id.* (citing 42 U.S.C. § 12117(a)). A plaintiff must file a timely charge with the Equal Employment Opportunity Commission (EEOC), or with a state or local agency with authority to grant or seek relief from the alleged unemployment practice, and receive a right-to-sue-letter before filing suit. *See id.* (citing 42 U.S.C. § 2000e-5(e)(1)).

Plaintiffs essentially concede that they never had an ADA claim and that they tried to convert their FMLA claim into an ADA claim. (doc. 33 at 3.) To the extent that the complaint asserts an ADA claim, neither it nor Plaintiffs' responsive brief asserts that they timely filed a charge with the EEOC or a parallel state or local agency or received a right-to-sue letter. (*See* docs. 17, 33.) Any

10

ADA claim should therefore be dismissed for failure to exhaust administrative remedies.

## C.  § 1983 Claim

Agero next argues that Mrs. Brown has no basis to support her claim that Agero, a private employer, violated § 1983.  (doc. 20 at 7.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States" and "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

Mrs. Brown sues a private company under § 1983.  To state a viable claim for relief, she must allege that Agero deprived her of her rights while acting under color of state law.  *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999), *West v. Atkins*, 487 U.S. 42, 48 (1988). "Under color of state law" excludes from its reach purely private conduct, no matter how discriminatory or wrongful.  *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982).  Private action may be deemed state action, for purposes of § 1983, only where the challenged conduct "may be fairly attributable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

Both the Supreme Court and the Fifth Circuit have recognized three tests for determining whether a private party is acting under color of state law: the public function test, the state compulsion test, and the joint action or nexus test.  *Lugar*, 457 U.S. at 939; *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241-42 (5th Cir. 1999).  Under the public function test, a private entity may be

considered a state actor if it performs a function that is traditionally "the exclusive province of the state." *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 2009), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (en banc).  Under the state compulsion test, state action may be found when a state has exercised coercive power or provided such encouragement that the choice is deemed to be a choice of the state.  *See Blum*, 457 U.S. at 1004. Finally, "[u]nder the nexus or joint action test, state action may be found where the government has 'so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise.'"  *Bass*, 180 F.3d at 242 (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357-58 (1974)).

Here, Mrs. Brown has not alleged facts to support a reasonable inference that in depriving of her a constitutionally protected right, Agero was acting under color of state law, and does not dispute in her response that she has failed to do so.  Accordingly, her § 1983 claim should be dismissed for failure to state a claim.

## D.  Discrimination Claim

Mrs. Brown claims discrimination under the Fourteenth Amendment's Equal Protection Clause, alleging that Agero caused "the discrimination of one" when it provided other similarly situated employees with FMLA leave while denying her protected leave under the FMLA.  (doc. 17 at 16-17.)  Agero moves to dismiss this so-called "class of one" discrimination claim, arguing that there is no support for finding a "class of one" claim in the private employment context.  (doc. 20 at 6-7.)

The Equal Protection Clause of the Fourteenth Amendment commands that no *State* shall "deny to any person within its jurisdiction the equal protection of the laws," and therefore requires

that all similarly situated persons be treated alike.  *See Plyler v. Doe*, 457 U.S. 202, 216 (1982);

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 n.15 (5th Cir. 2001) *cert. denied*, 534 U.S. 820

(2001).  Traditionally, to state an equal protection claim, a plaintiff must allege that "a state actor

intentionally discriminated against the plaintiff because of membership in a protected class."  *See*

*Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999).  However, "an equal protection claim can

in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination,

but instead claims that she has been irrationally singled out as a so-called 'class of one.'"  *Enquist*

*v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562,

564 (2000)).  To state a class-of-one equal protection claim, a plaintiff must allege that a state actor

has intentionally treated him or her differently than others similarly situated, and there is no rational

basis for the difference in treatment.  *See Olech*, 528 U.S. at 564.

Here, Plaintiff has alleged a class-of-one equal protection claim against a private employer

and has not alleged any facts giving rise to a reasonable inference that state action was involved. The

Supreme Court has recently declined to extend the equal protection class-of-one theory in the public

employment context, much less extend it to the private employment context.  *See Enquist*, 553 U.S.

at 598.  Even if there was state action, Plaintiff has failed to allege facts in support of her conclusory

allegation that Agero provided other similarly situated employees with FMLA leave while denying

Mrs. Brown protected leave under the FMLA.  Mrs. Brown has failed to plead a plausible claim for

discrimination in violation of the equal protection clause of the Fourteenth Amendment, and this

claim is therefore also subject to dismissal for failure to state a claim.

### E.  FMLA Claim

Agero also moves to dismiss Mrs. Brown's claim for violations of the substantive provisions

of the FMLA as well as for her claim for retaliation under the FMLA.  (doc. 20 at 8-9.)

"The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to accommodate the legitimate interests of employers."  *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (internal quotations omitted). The first set of provisions are prescriptive and provide a series of substantive rights.  *See id.*; *Hunt v. Rapides Healthcare Sys.*, LLC, 277 F.3d 757, 763 (5th Cir. 2001).  For instance, they require a covered employer to provide an eligible employee up to 12 weeks of unpaid leave to care for his or her child with a serious health condition.  29 U.S.C § 2612(a)(1)(C).  After a qualifying absence, they require the employer to restore the employee to the position he or she occupied prior to his or her leave, or its equivalent.  *Id.* § 2614(a)(1).  Claims for violations of these prescriptive rights are brought under § 2615(a)(1), which makes it unlawful for an employer to interfere with, restrain, or deny the exercise or attempted right of FMLA rights.  *See Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004).  The second set of provisions in the FMLA are proscriptive in nature and "bar employers from penalizing employees and other individuals for exercising their rights." *Elsensohn*, 530 F.3d at 372.  "The proscriptive FMLA rights include an employee's right not to be discriminated or retaliated against for having exercised the right to take FMLA leave."  *Haley*, 391 F.3d at 649.  Claims for violations of these proscriptive rights are brought under 29 U.S.C. § 2615(a)(2).  *Haley*, 391 F.3d at 649 (citing *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998)).  An employee may bring a suit to enforce his or her prescriptive or proscriptive rights pursuant to 29 U.S.C. § 2617(a).

1. Prescriptive Claim

Agero argues that Mrs. Brown cannot recover under the FMLA because she has suffered,

at most, a technical violation of the FMLA, and she has no damages.  (doc. 20 at 8.)

To obtain relief under the prescriptive provisions of the FMLA, a plaintiff must not only prove that the employer violated § 2615 by interfering with, restraining, or denying her exercise of FMLA rights, but also that she was prejudiced by this violation.  *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).  This is because "[a]n employer is only liable for compensation and benefits lost 'by reason of the violation,' for other monetary losses sustained "as a direct result of the violation,' and for 'appropriate' equitable relief including employment, reinstatement, and promotion."  *See id.* (citing 29 U.S.C. § 2617(a)(1)).  "The remedy is tailored to the harm suffered." *Id.* (citation omitted).

Here, Mrs. Brown alleges that after she made her FMLA request, Agero failed to provide her with notice of eligibility and rights and responsibilities; failed to provide her a final determination of her FMLA rights in a timely manner; interfered with her right to leave work on a daily basis, as needed, to care for her child with a serious medical condition; denied her intermittent leave on a daily basis even after the child's doctor certified that such leave was necessary to care for her ill child; and failed to comply with DOL's final determination that she was entitled to such leave.  (doc. 17 at 14.)

Mrs. Brown admits in her complaint that soon after she requested FMLA leave in December 2010, Agero verbally informed her that she could leave work early each day, as necessary, to care for her ill daughter, and verbally informed her the following month that her request for FMLA leave was approved.  Mrs. Brown also admits that between January and June of 2007, she left work from 15 minutes to an hour early on several occasions to care for her sick child.  Although she alleges that Agero gave her verbal warnings about leaving early, she also alleges that Agero removed the verbal

warnings from her personnel file pursuant to an agreement with the DOL.

Mrs. Brown also alleges in her complaint that on June 27, 2011, Agero permanently changed her work schedule to begin at 6:45 a.m. and end at 3:15 p.m.  This was more than what Agero was required to do under the medical certification provided by her child's doctor.  Notably, Mrs. Brown states that the medical certification specified only that she could leave up to 15 minutes early each day from work to care for her child,[3] that the certification was provided at a time when Agero allowed her to work a flexible schedule beginning between 7:30 a.m. and 9:00 a.m. and ending between 4:00 p.m. and 5:30 p.m.  While the earliest she could leave under the medical certification was 3:45 p.m., the permanent schedule allowed her to leave even earlier than that.[4]  Significantly, Mrs. Brown does not allege that she was prejudiced by the permanent schedule change.  In fact, she alleges that she was seeking a permanent schedule that allowed her to leave earlier than her flexible schedule would.

To the extent she alleges Agero did not allow her to leave early or warned her about leaving early after implementing the permanent schedule, Plaintiff has not alleged any facts giving rise to a reasonable inference that it was necessary for her under the FMLA to leave earlier than 3:15 p.m.  Notably, she does not allege that her child's doctor suggested the need to leave early after the change in her schedule.  Finally, Mrs. Brown alleges that Agero allowed her to exercise full-day intermittent

---

[3]  Although Mrs. Brown does not make this allegation in her amended complaint, she admits in her response that the medical certification allowed her to leave up to 15 minutes early each day to care for her child (doc. 34 at 4), and attaches the final determination from Agero dated November 7, 2011, stating that same fact (doc. 34-4 at 1).  The final determination can be considered part of the pleadings because it is explicitly referenced in Mrs. Brown's complaint, and its authenticity is unquestioned.  *See Walch v. Adjutant Gen.'s Dep't. of Tex.*, 533 F.3d 289, 293-94 (5th Cir. 2008); *Am. Gen. Life Ins. Co. v. Mickelson*, 2012 WL 1355591, at *2 (S.D. Tex. Apr. 18, 2012).

[4]  Without making an allegation in her complaint to that effect, Mrs. Brown states in her response that before the schedule change, she was working a flexible schedule that ended as early as 3:30 p.m. (doc. 33 at 4.)  Even if she provided Agero with a medical certification based on that schedule, the permanent schedule change accommodated her need to leave 15 minutes early if needed to care for her child.

FMLA leave 1-2 times per month at 1 to 2 days per episode, in addition to the permanent schedule change to accommodate her need to leave 15 minutes early.

Although Mrs. Brown alleges that her child's health deteriorated as a result of the FMLA violations, she does not allege any facts that support this conclusory allegation. She does not allege any days for which she required FMLA eligible leave, was denied such leave, and reported for work. Her assertions in her response that she suffered mental anguish and pain and suffering as a result of these violations also fail to give rise to a plausible claim for relief under the FMLA. As explained by the Supreme Court, "the cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined and measured by actual monetary losses." *See Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 739-40 (2003) (citation omitted).

As Mrs. Brown's pleadings do not give rise to a reasonable inference that any alleged FMLA violations prejudiced her, she cannot obtain relief under a prescriptive FMLA claim. *See Ragsdale*, 535 U.S. at 89; *Richardson v. Monitronics Int'l, Inc.*, 2004 WL 287730, at *2-4 (N.D. Tex. Jan. 27, 2004). Her prescriptive FMLA claim is therefore also subject to dismissal for failure to state a claim.

### 2. Proscriptive Retaliation Claim

Construing Mrs. Brown's retaliation claim as a proscriptive claim under the FMLA, Agero also moves to dismiss it for failure to state a claim. (*See* doc. 20 at 8-9.) Agero argues that she has not alleged that she suffered an adverse employment decision as a result of her leave request. (*Id.*)

To state a prima facie case for retaliation under the FMLA, a plaintiff must establish that (1) she engaged in protected activity, (2) she suffered an adverse employment decision, and (3) a causal connection existed between the protected activity and the adverse employment decision. *See Chaffin*

*v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999); *Richardson v. Monitronics In'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

Adverse employment decisions in the employment context are not limited to ultimate employment decisions, such as hiring, granting leave, discharging, promoting, and compensating, but include any actions that would dissuade a reasonable employee from exercising his or her rights under the FMLA. *See Lushute v. La., Dep't of Soc. Servs.*, 2012 WL 1889684, at *2 (5th Cir. May 25, 2012) (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006)); *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001). Stated differently, an employee suffers an adverse employment action under the FMLA, if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *McArdle v. Dell Prods., L.P.*, 293 F. App'x. 331, 337 (5th Cir. 2008) (quoting *Burlington N.*, 548 U.S. at 68, and extending its definition of adverse employment action in Title VII retaliation cases to FMLA cases).

With respect to her retaliation claim, Mrs. Brown makes a vague and conclusory allegation that Agero is setting her up to be terminated immediately. She does not allege that Agero terminated her, threatened to terminate her, or took any other action that would reasonably dissuade a reasonable person from making or supporting a charge of discrimination. To the extent she alleges that the verbal warnings for leaving early were adverse employment actions, the Fifth Circuit has held that a disciplinary warning alone is not an adverse employment action for purposes of a retaliation claim. *See DeSmit v. DFW Int'l. Airport Bd.*, 2011 WL 5346315, at *3 (N.D. Tex. Nov. 2, 2011) (citing *Dehart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007)). Without any other facts showing that the warning could have reasonably dissuaded her from

making or supporting a charge of discrimination, she has failed to state a an FMLA retaliation claim

upon which relief can be granted. *See id.*

## F.  Mr. Brown's Claims

Agero also moves to dismiss all of Mr. Brown's claims.  (doc. 20 at 5-6.)  Agero argues that

Mr. Brown is not an employee of Agero, his only alleged damages are derivative of the claims made

by his spouse, he cannot maintain a consortium claim based upon an alleged civil rights violation

of a spouse, and consortium claims are permitted under Texas law only where physical injury is

alleged.  (*Id.* at 5.)  Plaintiffs respond that the denial of FMLA leave to Mrs. Brown caused stress

in their relationship.  (doc. 33 at 2.)

Liberally construing his complaint, Mr. Brown has claimed violations of the FMLA, ADA,

and §1983, and a derivative claim for loss of consortium against Agero.  His FMLA, ADA, and §

1983, are all based on the alleged loss of spousal consortium resulting from the alleged denial of

FMLA leave, and not on an employment relationship between himself and Aegro.  (*See* doc. 17.)

Both the FMLA and ADA causes of action, however, are premised on an employment relationship

between a plaintiff and a defendant, and allow the plaintiff to seek compensation or benefits due to

him or her as an employee.  *See Collins v. OSF Healthcare Sys.*, 262 F.Supp.2d 959, 962 (C.D. Ill.

2003).  In addition, several courts have held that a claim for loss of consortium is not available under

the FMLA, ADA, or § 1983.  *See e.g. Jean-Louis v. Clifford*, 2012 WL 274031, at *8 (D.N.J. Jan.

31, 2012) (finding no loss of consortium claim under § 1983); *Laute v. City of Gloucester*, 2012 WL

253132, at *4 (D.N.J. Jan. 25, 2012) (same); *Cookenmaster v. Kmart Corp.*, 2008 WL 4539385, at

*19 (E.D. Mich. Oct. 7, 2008) (finding that "a claim for loss of consortium is not available under

the ADA or FMLA").  Similarly, a plaintiff's loss of consortium claim cannot derive from alleged

civil rights violation of a spouse, and must derive from a from a successful tort claim for physical injuries under Texas law. *See Barker v. Halliburton Co.*, 645 F.3d 297, 299-300 (5th Cir. 2011) (citing *Whittlesey v. Miller*, 572 S.W.2d 665, 667 (Tex. 1978); *Motor Express, Inc. v. Rodriguez*, 925 S.W.2d 638, 640 (Tex. 1996)).  Here, there is no allegation of a tort claim for physical injury by Mrs. Brown, much less a successful one.  Mr. Brown therefore cannot maintain a loss of consortium claim based upon the alleged violations of Mrs. Brown's civil rights.

Mr. Brown's claims against Agero are subject to dismissal for failure to state a claim as well.

## IV.  OPPORTUNITY TO AMEND

"'Generally a district court errs in dismissing a pro se complaint for failure to state a claim without giving the plaintiff an opportunity to amend.'"  *Amanduron v. Am. Airlines*, 416 F. App'x 421, 423 (5th Cir. 2011) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)). Courts may appropriately dismiss an action with prejudice without giving an opportunity to amend, however, when the plaintiff fails to respond to a motion to dismiss after being specifically invited to do so by the court, the defendant has specifically noted the failure to respond, and the plaintiff has had ample opportunity to amend the complaint.  *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (noting passage of 327 days).  Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiffs amended their complaint after Agero filed an earlier motion to dismiss pointing out the same pleading deficiencies as its current motion.  Since Plaintiffs were unable to overcome those deficiencies even after they were specifically pointed out, it appears that they have pled their best case to the Court.  All of their claims against Agero should therefore be dismissed

without granting them an opportunity to amend.[5]

## V.  PLAINTIFFS' MOTION FOR FMLA LEAVE

Plaintiffs move for temporary intermitted leave under the FMLA for Mrs. Brown to care for her ill child.  (doc. 36 at 2.)  They contend that on May 25, 2011, the child's doctor provided Agero with a completed medical certification form that entitles Mrs. Brown to intermittent leave under the FMLA, on a daily basis, as needed, to care for her ill child.  (*Id.* at 2.)

The motion can at best be construed as a motion for preliminary injunction.  A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008).  To obtain a preliminary injunction, the movant must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  *Tex. Midstream Gas Servs., LLC. v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) (citing *Winter*, 555 U.S. at 20).  The party seeking the preliminary injunction bears the burden of persuasion on all four requirements.  *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 253 (5th Cir. 2009).

### A.  Likelihood of Success

To establish the first element of likelihood of success on the merits, a "plaintiff must present a prima facie case but need not show that he is certain to win."  *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011).  The first element is assessed by looking "to standards provided by substantive law."  *Id.* (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990)).  As discussed, Mrs. Brown has

---

[5] Since all of Plaintiffs' claims against Agero fail, the relief they request based on those claims should also be dismissed.

failed to state a claim under the FMLA and has therefore failed to establish a likelihood of success on the merits.

## B.  Irreparable Harm

To satisfy the second element of the preliminary injunction standard,  the plaintiff must show "that if the district court denied the grant of a preliminary injunction, irreparable harm would result." *Janvey*, 647 F.3d at 600 (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)).  Mrs. Brown has not identified a specific irreparable harm she will suffer if she is denied temporary intermittent leave under the FMLA.  To the extent she argues her child will suffer irreparable harm if she is not granted temporary intermittent leave, Mrs. Brown has not submitted any evidence in support.  Although she claims that completed medical certifications by her child's doctor entitled her to intermittent leave under the FMLA, she has not presented any medical certification form or equivalent evidence to the court for determining any exigency or urgency for temporary intermittent leave, or to determine whether she is entitled to intermittent FMLA leave.

## C.  Balance of Equities

The third element requires a preliminary injunction applicant to show that the threatened injury outweighs any harm the injunction might cause.  *See Winter*, 555 U.S. at 23.  Mrs. Brown has failed to meet her burden with respect to the third element of the preliminary injunction standard as well, as she has failed to show that the balance of equities weighs in her favor.

## D.  Public Interest

Finally, the fourth element requires a preliminary injunction applicant to show that the injunction is in the public interest.  *Winter*, 555 U.S. at 20.  Mrs. Brown has also failed to show that granting a request for temporary intermittent leave is in the public interest, especially since her

request is not specific enough to identify why leave is urgently needed and does not provide any evidence in support.

Mrs. Brown has failed to carry her burden of showing why a preliminary injunction should issue in this case.  Plaintiffs' motion for temporary intermittent leave should therefore be denied.

## V.  RECOMMENDATION

The defendant's motion to dismiss should be **GRANTED**, and all of Plaintiffs' claims against Agero should be **DISMISSED** with prejudice.[6] Plaintiffs' motion for temporary intermittent leave should be **DENIED**.  The motions to strike exhibits is **DENIED as moot**.

**SO RECOMMENDED on this 16th day of July, 2012.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[6] Agero seeks attorney's fees and costs based on its contention that Plaintiffs have advanced numerous factual and legal arguments in their complaint that are patently frivolous.  (docs. 19 at 2; 20 at 9-10.)  Its one-sentence arguments are not sufficient to support an award of fees and costs.

23

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE